**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| SANAA CHAMBERS, *et al.*, | : | |
| *Plaintiffs*, | : | Case No. 1:24-cv-315 |
| v. | : | Judge Jeffery P. Hopkins |
| SPRINGFIELD TOWNSHIP, *et al.*, | : | |
| *Defendants*. | : | |

# OPINION AND ORDER

Plaintiff Sanaa Chambers and her brother, Plaintiff Shannon Chambers, (collectively, "Plaintiffs"), were traveling by car in Springfield Township, Ohio when officers pulled them over for an alleged window tint violation. Both ended up in the backseat of police cruisers while officers searched their car. Plaintiffs bring this 42 U.S.C. § 1983 case against Defendants Springfield Township, Ohio, Sergeant Thomas Mullens, Officer Derek Herzog, Officer Oliver Zoellner, and Officer David Reddington (collectively, "Defendants") alleging constitutional violations arising out of the traffic stop. This matter is before the Court on Defendants' Motion for Summary Judgment (the "Motion").[1] Doc. 21. Plaintiffs filed a Response in Opposition, Doc. 23, and Defendants filed a Reply, Doc. 26. The Motion is ripe for review. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment (Doc. 21).

[1] After Defendants filed their Motion for Summary Judgment, Plaintiff and Defendant Officer David Reddington stipulated to the dismissal of all claims against Reddington pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). Thus, the Court need not consider the now-dismissed claims against Reddington.

## I. BACKGROUND

Plaintiffs and siblings, Sanaa Chambers ("Sanaa") and Shannon Chambers ("Shannon"), commenced this action in the Hamilton County Court of Common Pleas on May 8, 2024. Doc. 2. Defendants removed the case to this Court, and Defendants filed an answer on June 7, 2024. Docs. 1, 3. Plaintiffs assert four claims under 42 U.S.C. § 1983. In the First Cause of Action, Shannon alleges that Defendants unlawfully arrested and seized him by handcuffing him, removing him from the vehicle, questioning him, and placing him in a police cruiser without probable cause or reasonable suspicion. Compl., Doc. 2, ¶¶ 32–33. In the Second Cause of Action, Sanaa similarly alleges that Defendants unlawfully arrested and seized her by removing her from the vehicle, directing her to place her hands behind her back, and placing her in a separate police cruiser without probable cause or reasonable suspicion. *Id.* ¶¶ 38–43. Plaintiffs allege in the Third Cause of Action that Defendants unlawfully stopped and searched their vehicle without a warrant, consent, probable cause, or another applicable exception to the warrant requirement. *Id.* ¶¶ 44–50. Finally, in the Fourth Cause of Action, Plaintiffs allege that Springfield Township is liable for the asserted constitutional violations because they resulted from the Township's policies, practices, customs, and alleged failures to train and supervise its officers. *Id.* ¶¶ 51–60. Defendants deny liability and assert, among other defenses, qualified immunity.

### A. The Traffic Stop

At approximately 1:00 a.m. on June 15, 2023, Officer Oliver Zoellner ("Officer Zoellner") was on duty with the Springfield Township Police Department. Zoellner Aff., Doc. 18, ¶ 3. While parked in a cruiser near Simpson Avenue, Officer Zoellner saw a white Hyundai Sonata ("Sonata") pass his location. *Id.* ¶ 4. Sanaa was driving the Sonata and her

brother, Shannon, was seated in the front passenger seat. Sanaa Dep., Doc. 10, 18:1–20:19; Shannon Dep., Doc. 11, 44:23–24. Officer Zoellner activated his emergency lights and stopped the Sonata. Zoellner Dep., Doc. 15, 9:18–22; Shannon Dep., Doc. 11, 55:17–19. The parties agree that the stated basis for the stop was the vehicle's dark window tint. Zoeller Aff., Doc. 18, ¶ 5; Doc. 21-1, ¶ 4; Doc. 23-1, ¶ 4. The parties also agree that the vehicle had tint that was not entirely factory installed. Doc. 21-1, ¶ 5; Doc. 23-1, ¶ 5. Sanaa testified, however, that the vehicle came equipped with factory-installed, certified tint and that a previous owner added another layer of tint. Sanaa Dep., Doc. 10, 23:10–25:3. After the vehicle stopped, Officer Zoellner communicated through his loudspeaker and directed the occupants to lower all four windows. Zoellner Dep., Doc. 15, 10:1–13. Plaintiffs complied. *Id*. at 10:14–17.

**B. Shannon's Detention**

Officer Zoellner approached the Sonata on the passenger side, where Shannon was seated. Zoellner Dep., Doc. 15, 10:22–24. Shannon testified that after a brief introduction, Officer Zoellner handcuffed him, asked him for identification, and directed him to exit the Sonata. Shannon Dep., Doc. 11, 60:10–61:25. Shannon was then patted down, asked whether he had weapons or drugs, and escorted to Officer Zoellner's cruiser. *Id*. at 62:4–63:20. Shannon testified that Officer Zoellner told him he was being detained for officer safety and did not tell him that he was under arrest. *Id.* at 67:23–68:10.

By contrast, Officer Zoellner testified that he detained Shannon both because of an outstanding warrant in Golf Manor and because the odor of marijuana was emanating from the vehicle. Zoellner Dep., Doc. 15, 11:7–11. However, Officer Zoellner could not recall when or how he learned of the warrant. *Id.* at 11:12–25. He further testified that Shannon's information could have been associated with Sanaa or the vehicle. *Id*. Sanaa testified that the

Sonata was titled, registered, and insured to her and Plaintiffs' mother, rather than Shannon. Sanaa Dep., Doc. 10, 24:15–19. The parties dispute whether Officer Zoellner knew, before his initial encounter, that Shannon had an outstanding Golf Manor warrant for an unpaid traffic citation. Plaintiffs contend that Officer Zoellner did not learn of the Golf Manor matter until after Shannon had been placed in the rear of the cruiser and Officer Zoellner ran his information through the RCIC database. Shannon Dep., Doc. 11, 63:3–10; Doc. 23-1, ¶ J.

Whatever the basis for detention, the parties agree that Shannon was handcuffed, removed from the Sonata, patted down, and placed in Officer Zoellner's cruiser for some time. Shannon Dep., Doc. 11, 60:10–63:10; Doc. 21-1, ¶¶ 10–11; Doc. 23-1, ¶¶ 10–11. It is agreed that Officer Zoellner ultimately told Shannon about the Golf Manor matter and issued a recitation associated with it. Shannon Dep., Doc. 11, 63:3–64:13; Golf Manor Citation, Doc. 11-1, PageID 209. Then, the officers removed Shannon's handcuffs, released him, and escorted him back to the Sonata. Shannon Dep., Doc. 11, 66:25–67:3.

**C. Sanaa's Detention**

After Shannon was removed from the Sonata, Officer Derek Herzog ("Officer Herzog") approached Sanaa at the driver's-side window. Sanaa Dep., Doc. 10, 35:8–10; Herzog Dep., Doc. 14, 7:22–8:8. Officer Herzog asked Sanaa to exit the vehicle. Herzog Dep., Doc. 14, 9:15–10:11. Sanaa testified that Officer Herzog asked whether she had smoked marijuana that day, had marijuana on her person, or had smoked marijuana in the Sonata. Sanaa Dep., Doc. 10, 37:12–38:23. The parties dispute whether Officer Herzog also asked Sanaa whether she had weapons. *Compare* Doc. 21-1, ¶ 16, *with* Doc. 23-1, ¶ 16.

Sanaa testified that Officer Herzog held her hands behind her back, directed her to leave her phone in the Sonata, and escorted her to a police cruiser. Sanaa Dep., Doc. 10,

39:2–19; Herzog Dep., Doc. 14, 9:15–10:11. She was not handcuffed. Sanaa Dep., Doc. 10, 39:2–4. Officer Herzog initially testified that he did not know why he removed Sanaa from the Sonata and placed her in the cruiser, but that Officer Zoellner indicated "there was some reason that we needed to remove all occupants from the vehicle." Herzog Dep., Doc. 14, 9:1–14. Officer Herzog later testified that "she was detained for the odor of marijuana in the vehicle." *Id.* at 11:4–9. Sanaa testified that she sat in the rear of the cruiser for about five minutes, was not questioned while there, and was then told that she could leave. *Id*. at 39:20–40:12. Plaintiffs maintain Sanaa was not free to leave while in the cruiser. Doc. 23-1, ¶ 17.

**D. Vehicle Search**

The parties do not dispute that the Sonata was searched after both Plaintiffs had been removed from the vehicle. Zoellner Dep., Doc. 15, 20:25–21:3; Herzog Dep., Doc. 14, 11:5–9; Mullens Dep., Doc. 12, 7:18–25. Officer Herzog and Sergeant Thomas Mullens ("Sergeant Mullens") conducted the search. Herzog Dep., Doc. 14, 11:5–9; Mullens Dep., Doc. 12, 7:18–25. Officer David Reddington ("Officer Reddington") arrived as the fourth officer and testified he remained on the sidewalk while other officers conducted the search. Reddington Dep., Doc. 13, 7:6–9.[2] Defendants maintain Officer Zoellner smelled marijuana emanating from the Sonata and that the claimed odor provided the basis for the search. Zoellner Dep., Doc. 15, 21:8–12; Herzog Dep., Doc. 14, 11:5–12; Mullens Dep., Doc. 12, 21:16–25.

Plaintiffs dispute the reliability of that claimed observation. Doc. 23-1, ¶ 20. Officer Zoellner testified that he smelled marijuana but could not recall precisely how he

[2] Plaintiffs conceded that Officer Reddington did not actively participate in the search. Doc. 23, PageID 417 n.2.

communicated that fact to the other officers; he testified that he might have signaled by scratching his nose. Zoellner Dep., Doc. 15, 13:16–14:3. Officer Zoellner did not participate in the search. *Id*. Doc. 15, 12:24–13:1. Officers Herzog and Reddington and Sergeant Mullens each testified that they did not smell marijuana. Herzog Dep., Doc. 14, 19:1–2; Reddington Dep., Doc. 13, 8:7–9; Mullens Dep., Doc. 12, 22:1–2. All parties admit that no marijuana was found in the Sonata. Doc. 21-1, ¶ 22; Doc. 23-1, ¶ 22. However, Shannon testified that he smoked marijuana every other night, Shannon Dep., Doc. 11, 48:15–19, and Sanaa testified that she smoked marijuana nightly, although she testified that she had not smoked marijuana on June 15, 2023. Sanaa Dep., Doc. 10, 21:22–22:25.

The parties also identify recorded remarks made during the search. Officer Herzog testified that he stated, "we just illegally searched this," and later characterized the statement as sarcasm. Herzog Dep., Doc. 14, 24:2–26:3; Audio Recording Tr., Doc. 14-1, PageID 319. The recording also includes Sergeant Mullens's response: "hey chill out though in case that's on record." Audio Recording Tr., Doc. 14-1, PageID 319. Plaintiffs contend that these statements bear on the officers' credibility and state of mind. Defendants maintain that the search was lawful and supported by Officer Zoellner's claimed detection of marijuana odor.

Against this factual backdrop, the Court turns to whether Defendants are entitled to summary judgment on Plaintiffs' claims. The Court first addresses the claims against the individual Defendants for the alleged unreasonable search and seizure and their assertion of qualified immunity, then Plaintiffs' municipal-liability claim against Springfield Township.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In deciding a summary judgment motion, the Court views the evidence and draws all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

The nonmoving party cannot defeat summary judgment merely by identifying any factual disagreement. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is *material* if its resolution affects the action's outcome, and a dispute is *genuine* if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At bottom, the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52).

## III. LAW AND ANALYSIS

### A. Counts I, II, and III: Violations of the Fourth Amendment

Plaintiffs' First, Second, and Third Causes of Action arise under 42 U.S.C. § 1983, which provides a cause of action for deprivation under color of state law, of any rights,

privileges or immunities secured by the Constitution or laws of the United States. To succeed on their claims, Plaintiffs must show: first, that they were deprived of a right secured by the Constitution or laws of the United States; and second, that the deprivation was caused by a person acting under the color of state law. *Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 (6th Cir. 2023). Here, neither party has disputed that Defendants were acting under the color of state law during the traffic stop, so the focus is on whether Plaintiffs were deprived of a federal constitutional right.

Plaintiffs allege that Defendants deprived them of their constitutional rights secured by the Fourth Amendment. The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968)). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809–10 (1996) (citations omitted).

Against that backdrop, the Court will proceed to consider Plaintiffs' claims, starting first with their contention that Defendants unlawfully stopped their vehicle.

**1. Initial Traffic Stop**

When an officer "has 'probable cause' to believe that a driver has violated traffic law, the officer may stop the driver without running afoul of the Fourth Amendment; this is true even if the officer is *actually* motived by some other purpose, such as investigating an unrelated crime." *United States v. Shelton*, 817 F. App'x 217, 219 (6th Cir. 2020) (quoting *Whren*, 517

U.S. at 810). However, when there is an "ongoing" traffic violation such as the vehicle having illegally tinted windows, "the less demanding 'reasonable suspicion' standard applies." *Id.* (citing *United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008)). "An officer reasonably suspects a window-tint violation if the officer is familiar with their state's tint law and estimates that a vehicle is tinted substantially darker than that law permits." *Id.* (quoting *United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008)) (cleaned up). Regardless of whether probable cause or reasonable suspicion applies to the stop, an officer's subjective motives do not invalidate an objectively justified stop. *Whren*, 517 U.S. at 813.

The undisputed record establishes that Officer Zoellner observed dark tint on the Sonata's windows and initiated the traffic stop on that basis. Zoellner Aff., Doc. 18, ¶¶ 4–5. Plaintiffs acknowledge that the vehicle had an additional, non-factory layer of tint. Doc. 23-1, ¶ 5. Although Sanaa testified that the Sonata also had factory-installed certified tint and that a prior owner applied the additional layer, Sanaa Dep., Doc. 10, 23:10–25:3, that evidence does not negate Zoellner's objectively reasonable basis to suspect a window tint violation since there is no dispute that the windows had an additional layer of tint. Accordingly, the initial traffic stop was not unreasonable.

**2. Seizure**

In the First and Second Causes of Action, Shannon and Sanaa, respectively, allege that Defendants unlawfully arrested and seized them without probable cause or reasonable suspicion. Compl., Doc. 2, ¶¶ 32–37, 38–43. The Court will start first with Shannon. Shannon alleges that Defendants unlawfully arrested him by handcuffing him, removing him from the Sonata, placing him in a police cruiser, and questioning him without Miranda warnings. *Id.*

¶¶ 33–37. Because this claim challenges the reasonableness of Shannon's seizure, it is governed by the Fourth Amendment.[3]

A traffic stop is ordinarily analyzed under the principles governing an investigative detention under *Terry*, rather than as a formal arrest. *United States v. Noble*, 762 F.3d 509, 519 (6th Cir. 2014); *Terry*, 392 U.S. at 30. "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver [and passenger] to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *United States v. Ware*, 465 F. App'x 487, 494 (6th Cir. 2012) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977)). Further, an officer may detain a vehicle and its occupants for the time reasonably necessary to address the traffic violation and attend to related safety concerns. *Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015). "'Once the purpose of a traffic stop is completed, a police officer 'may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.'" *United States v. Blair*, 524 F.3d 740, 752 (6th Cir. 2008) (quoting *United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006)). Whether a stop was prolonged is a fact-specific inquiry based on the "totality of the circumstances surrounding the stop." *United States v. Everett*, 601 F.3d 484, 494 (6th Cir. 2010) (quoting *United States v. Turvin*, 517 F.3d 1097, 1101 (9th Cir. 2008)). Although the use of handcuffs and placement in a police cruiser do not automatically convert an investigatory detention into an arrest requiring probable cause, the restraints used must remain reasonably related to the

[3] Although the Complaint characterizes this claim as one for deprivation of "due process," the factual allegations identify the asserted constitutional wrong as an allegedly unlawful arrest—*i.e.*, the seizure of Plaintiff's person without a warrant, probable cause, or other lawful justification. *See* Compl., Doc. 2, ¶¶ 34–36; *see also Baker v. McCollan*, 443 U.S. 137, 140 (1979) (In any § 1983 suit, "it is necessary to isolate the precise constitutional violation with which [the defendant] is charged").

circumstances that justified the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983) ("The scope of the detention must be carefully tailored to its underlying justification."); *Brown v. Lewis*, 779 F.3d 401, 414 (6th Cir. 2015) ("When the nature of a seizure exceeds the bounds of a permissible investigative stop, the detention may become an arrest that must be supported by probable cause."); *Gardner v. Village of Grand River*, 955 F. Supp. 817, 825 (N.D. Ohio 1997) ("Any detention of [the plaintiff] beyond the purposes of the initial traffic stop can be justified only by a reasonable suspicion of some wrongdoing beyond the traffic violation.").

Defendants contend that Officer Zoellner has several reasons for briefly detaining Shannon. First, they allege that Officer Zoellner lawfully restrained Shannon because Officer Zoellner knew that Shannon had an outstanding Golf Manor warrant. Zoellner Dep., Doc. 15, 11:7–20; Doc. 26, PageID 451–52. Plaintiffs, however, identify evidence from which a reasonable jury could find that Officer Zoellner did not learn of the Golf Manor matter until after Shannon had been handcuffed and placed in the rear of the cruiser. Shannon Dep., Doc. 11, 63:3–10. Specifically, Officer Zoellner testified that he could not recall when or how he learned of the warrant. Zoellner Dep., Doc. 15, 11:12–25. Officer Zoellner further speculated that the warrant information may have been linked to the Sonata, but there is competing evidence that the car was not registered or otherwise associated with Shannon. *Id.*; Sanaa Dep., Doc. 10, 24:15–19. This dispute is material. A warrant that Officer Zoellner learned of *after* restraining Shannon could not supply the contemporaneous justification for Shannon's initial handcuffing, pat-down, and placement in the cruiser.

Defendants also rely on Officer Zoellner's assertion that he smelled marijuana. An officer may use his senses while carrying out the traffic stop's mission, and information obtained through those observations may create reasonable suspicion to detain the vehicle's

occupants longer to investigate other criminal activity. *United States v. Stevenson*, 43 F.4th 641, 648 (6th Cir. 2022). However, Plaintiffs have produced evidence from which a reasonable jury could conclude that Officer Zoellner did not smell marijuana. Officers Herzog and Reddington and Sergeant Mullens each testified that they did not smell marijuana. Herzog Dep., Doc. 14, 19:1–2; Reddington Dep., Doc. 13, 8:7–9; Mullens Dep., Doc. 12, 18:16–22:2 Further, Officer Zoellner could not recall how he conveyed his claimed detection of marijuana to the other officers and testified that he may have done so by scratching his nose. Zoellner Dep., Doc. 15, 13:16–14:3. Likewise, this proffered justification for Shannon's detention after the initial traffic stop is material and is disputed.

The same factual dispute bears on Sanaa's detention. After Shannon was removed from the Sonata, Officer Herzog ordered Sanaa to exit the vehicle. Herzog Dep., Doc. 14, 9:15–10:11. Sanaa testified that Officer Herzog held her hands behind her back, directed her to leave her phone in the Sonata, escorted her to a cruiser, and confined her there for approximately five minutes. Sanaa Dep., Doc. 10, 39:2–40:12. Officer Herzog testified that he did not know why he removed Sanaa from the Sonata and placed her in the cruiser but indicated that Officer Zoellner had "some reason" Sanaa should be removed from the vehicle. Herzog Dep., Doc. 14, 9:1–14. And Officer Herzog later testified that "she was detained for the odor of marijuana in the vehicle." *Id*. at 11:4–9.

Defendants contend that Officer Herzog acted at Officer Zoellner's direction and that Sanaa's brief detention was justified while the officers conducted a vehicle search based on Officer Zoellner's claimed detection of marijuana. Doc. 26, PageID 452–53. But, viewed in Plaintiffs' favor, the record would permit a jury to find that Officer Zoellner did not smell marijuana, did not effectively communicate any such observation to the other officers, and

that Officer Herzog lacked another particularized safety or investigative basis to remove Sanaa from the Sonata and confine her in a cruiser. A jury could therefore find that Sanaa's detention also exceeded the permissible scope of the traffic stop.

Because the material disputes concerning the asserted warrant and marijuana odor bear directly on whether the individual officers had an objectively reasonable basis for the restraints imposed, Defendants are not entitled to summary judgment on the grounds that Shannon's and Sanaa's detention was reasonable as a matter of law.

However, to the extent Plaintiffs' First Cause of Action purports to assert a claim under § 1983 based solely on Officer Zoellner's failure to administer *Miranda* warnings, that claim fails as a matter of law. *See* Compl. Doc. 2, ¶ 33. The Supreme Court has held that *Miranda* establishes prophylactic rules rather than a constitutional right enforceable through § 1983; accordingly, even the admission of an unwarned statement in a criminal proceeding does not itself furnish a § 1983 claim. *Vega v. Tekoh*, 597 U.S. 134, 141 (2022) ("The question we must decide is whether a violation of the *Miranda* rules provides a basis for a claim under §1983. We hold that it does not."). Thus, Plaintiffs cannot recover under § 1983 merely because Shannon may have been questioned without first receiving *Miranda* warnings.

**3. Vehicle Search**

Consider next the vehicle search. The Fourth Amendment prohibits "unreasonable" searches. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989). Generally, this means that law enforcement must "obtain a warrant before conducting a search." *United States v. Woods*, 168 F.4th 952, 954 (6th Cir. 2026). But there are limited exceptions to the warrant requirement. One such exception, known as the automobile exception, permits officers to conduct warrantless searches of vehicles on public roads if there is probable cause to believe

that the vehicle contains evidence of a crime. *Id*. Probable cause exists when, under "the totality of the circumstances," there is a "fair probability, . . . that contraband or evidence of a crime will be found." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (citation omitted).

When it comes to traffic stops, reasonable suspicion "may ripen into probable cause to search a vehicle based on the officer's interactions with the [vehicle's] occupants." *United States v. Lyons*, 687 F.3d 754, 764 (6th Cir. 2012). At the time of the stop, an experienced officer's detection of marijuana odor could, standing alone, provide probable cause to search a vehicle under the automobile exception. *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002) ("This court has held that an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search."); *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993) (concluding that an officer's smelling marijuana during the course of a *Terry* stop "constituted probable cause to believe that there was marijuana in the vehicle" and that "[o]nce this probable cause existed, a search warrant was not necessary").

That principle, however, presupposes that an officer actually detected the odor and that the officer's asserted observation is properly credited. Defendants contend that Officer Zoellner's detection of marijuana odor supplied probable cause to search the Sonata, Doc. 26, PageID 454–55, but the record contains a genuine dispute as to whether Officer Zoellner smelled marijuana. As noted, three of the officers, including the searching officers, each testified that they did not smell marijuana. Herzog Dep., Doc. 14, 19:1–2; Reddington Dep., Doc. 13, 8:7–9; Mullens Dep., Doc. 12, 22:1–2. Officer Zoellner is the only officer who claimed to have detected the odor of marijuana and could not recall how he communicated his claimed detection to the other officers but testified that he may have done so by scratching

his nose. Zoellner Dep., Doc. 15, 12:1–23, 13:16–14:3. Further, the record reflects conversation between the searching officers to the effect "we just illegally searched this." Herzog Dep., Doc. 14, 24:2–26:3; Audio Recording Tr., Doc. 14-1, PageID 319. As a result, the Court cannot determine whether the automobile exception applies by crediting Officer Zoellner's testimony. Viewing the evidence in Plaintiffs' favor, a reasonable jury could find that no officer detected marijuana and that the Sonata was searched without probable cause. Defendants are not entitled to summary judgment on Plaintiffs' vehicle search claim.

#### 4. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity. Doc. 21, PageID 390–94. "'Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known.'" *Brown*, 779 F.3d at 411 (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (citation omitted). A right is clearly established when, at the time of the challenged conduct, its contours were "sufficiently clear" that every reasonable official would understand that the particular conduct at issue was unlawful. *Id*. at 63. If Plaintiff fails to satisfy either step in this framework, "then qualified immunity shields the government officer from civil damages." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Turning to the first step, in the two-step framework, there exists a genuine dispute of material fact as to whether Defendants violated Plaintiffs' constitutional rights under the

Fourth Amendment. As explained above, genuine disputes of material fact remain as to whether Officer Zoellner had a lawful basis to handcuff and confine Shannon, whether Defendants had a lawful basis to detain Sanaa, and whether Defendants had probable cause to search the Sonata. Those disputed facts are material to whether Defendants violated Plaintiffs' Fourth Amendment rights to be free from an unreasonable seizure and a warrantless vehicle search unsupported by probable cause or another exception to the warrant requirement. *See Terry*, 392 U.S. at 19–20, 27–30; *United States v. Ross*, 456 U.S. 798, 809 (1982); *Rodriguez*, 575 U.S. at 354–57.

But even if Defendants violated Plaintiff's rights under the Fourth Amendment, Plaintiffs "still can't recover unless its unreasonableness was clearly established at the time." *Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020) (citation omitted). To show that their rights were clearly established, Plaintiffs must identify "precedent finding a Fourth Amendment violation in similar circumstances," or "failing that," they must "show that this is the rare obvious case in which no precedent is needed." *Id*. (cleaned up).

Plaintiffs satisfy that burden as to each of the asserted Fourth Amendment violations, at least when the Court draws all reasonable inferences in Plaintiffs' favor. The clearly established inquiry at summary judgment must proceed on that factual footing. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam). Defendants therefore cannot obtain qualified immunity by relying on their version of the disputed facts—namely, that Officer Zoellner smelled marijuana, that Shannon's handcuffing was justified by officer-safety concerns, or that there was reasonable suspicion to continue detaining Sanaa.

First, it is clearly established that officers may not handcuff and confine a person during an investigatory detention absent particularized facts supporting a reasonable belief

that the person presents a safety risk, is likely to flee, or otherwise requires that degree of restraint. *See Brown*, 779 F.3d at 414–15; *Bennett v. City of Eastpointe*, 410 F.3d 810, 836–37 (6th Cir. 2005). Although handcuffs do not automatically transform a *Terry* stop into an arrest, their use must be reasonably related to the circumstances that justified the stop. *Brown*, 779 F.3d at 414–15. Generalized safety concerns attendant to traffic stops do not, standing alone, authorize officers to handcuff and confine an otherwise compliant individual. *Id.* at 415. Thus, if a jury finds that Shannon was compliant, did not attempt to flee, was not suspected of a violent crime, and displayed no indication that he was armed or dangerous, it could conclude that Defendants violated a clearly established right by handcuffing and confining him without an individualized basis for doing so.

Second, it is clearly established that officers may not prolong a traffic stop or expand its scope to investigate unrelated criminal activity unless they develop independent reasonable suspicion of such activity. *Rodriguez*, 575 U.S. at 354–57; *Green v. Throckmorton*, 681 F.3d 853, 860 (6th Cir. 2012). This limitation applies to passengers as well as drivers because a traffic stop effects a seizure of everyone in the vehicle. *Brendlin v. California*, 551 U.S. 249, 255–59 (2007). Reasonable suspicion must rest on specific and articulable facts rather than an officer's inchoate hunch. *United States v. Campbell*, 549 F.3d 364, 370–71 (6th Cir. 2008). Accordingly, if a jury finds that Defendants lacked a basis to suspect Sanaa of criminal conduct apart from the disputed allegation of marijuana odor, then Defendants violated clearly established law by continuing to detain her beyond the traffic stop's permissible scope.

Finally, it is clearly established that officers may conduct a warrantless search of an automobile only when they have probable cause to believe it contains contraband or evidence of a crime. *Ross*, 456 U.S. at 809; *Lyons*, 687 F.3d at 770. Defendants are correct that an

experienced officer's actual detection of marijuana odor could establish probable cause to search a vehicle. *United States v. Brooks*, 987 F.3d 593, 599–600 (6th Cir. 2021). But that principle does not assist Defendants if, as Plaintiffs' evidence would permit a jury to find, Officer Zoellner did not actually detect marijuana odor and no other facts gave rise to probable cause. The fact that three officers testified that they did not smell marijuana, together with Officer Zoellner's uncertainty regarding how he communicated his claimed observation and the officers' recorded discussion suggesting that they had conducted an illegal search, creates a genuine factual dispute regarding whether the asserted basis for the search existed. If a jury resolves that dispute in Plaintiffs' favor, then the search was not a close case involving the sufficiency of corroboration for an officer's odor-based probable-cause determination. Rather, it was a warrantless vehicle search unsupported by probable cause or any other exception to the warrant requirement—a violation that longstanding Supreme Court and Sixth Circuit precedent clearly established. *See Ross*, 456 U.S. at 809; *Garza*, 10 F.3d at 1246; *Elkins*, 300 F.3d at 659.

In short, the disputed facts that preclude summary judgment on Plaintiffs' Fourth Amendment claims also preclude qualified immunity. If a jury credits Defendants' account, it may find that the restraints, detention, and search were supported by the facts known to Defendants. But if it credits Plaintiffs' evidence, it could find that Defendants handcuffed Shannon without an individualized basis, detained Sanaa without reasonable suspicion, and searched the Sonata without probable cause. Each of those actions violated clearly established Fourth Amendment principles. Accordingly, Defendants are not entitled to qualified immunity on summary judgment.

### B. Count IV: Governmental Liability under *Monell*

Plaintiffs also seek to hold Springfield Township liable on the basis of municipal liability. Specifically, Plaintiffs allege that the constitutional violations resulted from the Township's policies, practices, customs, and alleged failures to train and supervise its officers. Compl., Doc. 2, ¶¶ 51–60.

To establish their claim that Springfield Township is liable for the purported unlawful actions of its officers, Plaintiffs "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). There are four ways that Plaintiffs can make the requisite showing: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id*. That said, if Plaintiffs fail to show an underlying constitutional violation, then a *Monell* claim cannot succeed. *See Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)) ("[T]here can be no liability under *Monell* without an underlying constitutional violation.").

Here, Plaintiffs proceed on a failure-to-train theory. To establish a failure-to-train claim, Plaintiffs must identify a particular deficiency in the Township's training program, show that Township policymakers were deliberately indifferent to the risk created by that deficiency, and demonstrate that the deficiency caused their injuries. *See City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989); *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011).

To advance this theory, Plaintiffs suggest that Defendants improperly relied on circumstantial considerations, such as the existence of a "high crime area," to justify the search in this case. Plaintiffs cite to the officers' references to a "high-crime area," Mullens Dep., Doc. 12, 15:1–14, Sanaa's testimony that officers stated they were "looking for crime," Sanaa Dep., Doc. 10, 33:5–10, and *State v. Jackson*, 2024-Ohio-4770. Doc. 23, PageID 427–29. The cited evidence may bear on the officers' stated reasons for their actions in this case, but it does not identify a deficiency in the Township's training program. Officer Mullens testified that he considered the area's character as a "high-crime area" when explaining the detention following the asserted marijuana odor. Mullens Dep., Doc. 12, 15:1–14. This testimony concerns Officer Mullens' own view of the circumstances; Plaintiffs offer no evidence that the Township adopted that view as a policy or authorized officers to detain or search persons without the constitutionally required level of suspicion.

*Jackson* likewise does not establish a Township custom. It concerns one other encounter involving Township officers, and it was decided after the June 2023 incident at issue here. *Jackson*, 2024-Ohio-4770, ¶ 1. Even though *Jackson* involved an unconstitutional stop or search based on similar generalized circumstances, two alleged incidents do not establish a persistent and widespread practice or show that Township policymakers had notice of such a practice before Plaintiffs' encounter. *Id.*; *see City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Obviously, if one retreats far enough from a constitutional violation some municipal policy can be identified behind almost any such harm inflicted by a municipal official[.]").

Plaintiffs next contend that the Township failed to train officers on probable cause, conflicting observations during searches, supervisory responsibilities, and racial bias. Doc. 23,

PageID 427–29. Their evidence consists principally of the officers' conduct and comments during this stop, including the recorded comments about the search and Sanaa's birth-control medication. Mullens Dep., Doc. 12, 22:3–14; Herzog Dep., Doc. 14, 23:12–21; Doc. 23, PageID 427–29. That evidence may be relevant to the individual officers' credibility or state of mind. It does not, however, identify the content of the Township's training program, a particular omission or deficiency in that program, or evidence that Township policymakers knew that officers were committing similar constitutional violations and deliberately declined to provide needed training. *See City of Canton*, 489 U.S. at 390–91; *Connick*, 563 U.S. at 61–62.

Because Plaintiffs have not produced evidence from which a reasonable jury could find that an official Township policy, custom, or deliberately indifferent failure to train or supervise was the moving force behind the alleged Fourth Amendment violations, Springfield Township is entitled to summary judgment on the Fourth Cause of Action.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment (Doc. 21). The Motion is **DENIED** as to Plaintiffs' First, Second, and Third Causes of Action against the remaining individual Defendants. The Motion is **GRANTED** as to Plaintiffs' Fourth Cause of Action against Defendant Springfield Township, Ohio. The Fourth Cause of Action is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

September 30, 2026

Jeffery P. Hopkins
United States District Judge